## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSICA BURCIAGA, CLAUDIA SAMPEDRO, JANET GUZMAN, ROSA ACOSTA, BRENDA GEIGER, IESHA MARIE CRESPO, GALLIENNE NABILA STEPHANIE RAO, and LAUREN WOOD,<br><br>Plaintiffs,<br><br>- against -<br><br>TROPIX ULTRA LOUNGE, LLC d/b/a TROPIX ULTRA LOUNGE a/k/a TROPIX ULTRA; TROPIX CARIBBEAN GRILLE, LLC d/b/a TROPIX CARIBBEAN GRILLE a/k/a TROPIX ULTRA; and GAIRY BLAKE,<br><br>Defendants. | CIVIL ACTION NO: _____<br><br>**(JURY TRIAL DEMANDED)**<br><br><br><br><br><br><br><br><br><br>DECEMBER 17, 2024 |

### COMPLAINT

Plaintiffs JESSICA BURCIAGA, CLAUDIA SAMPEDRO, JANET GUZMAN, ROSA ACOSTA, BRENDA GEIGER, IESHA MARIE CRESPO, GALLIENNE NABILA, STEPHANIE RAO and LAUREN WOOD, (collectively, "Plaintiffs"), file this Complaint ("Complaint") against TROPIX ULTRA LOUNGE, LLC d/b/a TROPIX ULTRA LOUNGE a/k/a TROPIX ULTRA; TROPIX CARIBBEAN GRILLE, LLC d/b/a TROPIX CARIBBEAN GRILLE a/k/a TROPIX ULTRA; and GAIRY BLAKE (collectively, "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night clubs, Tropix

Ultra Lounge located in Waterbury, Connecticut and Tropix Caribbean Grille located in Hartford, Connecticut (Collectively, "Night clubs" or "Tropix").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Right of Privacy: Appropriation of Likeness; c) Right of Privacy: False Light; d) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b; e) Negligence and *Respondeat Superior;* f) Conversion; g) Unjust Enrichment; and h) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

7.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States outside of the state of Connecticut.

8.      According to publicly available records, Defendant Tropix Ultra Lounge, LLC, is a limited liability company formed under the laws of the state of Connecticut, with its principal place of business located at 384 Stillson Rd, Waterbury, Connecticut, 06704. Upon information and belief, Tropix Ultra Lounge, LLC operates Tropix Ultra Lounge, which is located at 384 Stillson Rd, Waterbury, Connecticut, 06704.

9.      According to publicly available records, Defendant Tropix Caribbean Grille, LLC, is a limited liability company formed under the laws of the state of Connecticut, with its principal place of business located at 3229 Main St, Hartford, Connecticut 06120. Upon information and belief, Tropix Caribbean Grille, LLC operates Tropix Caribbean Grille, which is located at 3229 Main St, Hartford, Connecticut 06120.  Upon information and belief, Tropix Ultra Lounge and Tropix Caribbean Grille (collectively "Tropix") are sister establishments.

10.     According to publicly available records, Defendant Gairy Blake is an Owner and/or CEO of Tropix Ultra Lounge, LLC and Tropix Caribbean Grille, LLC. Upon information and belief, Gairy Blake can be located at 384 Stillson Rd, Waterbury, Connecticut, 06704 or 3229 Main St, Hartford, Connecticut 06120.

11.     Venue is proper in the United States District Court for the District of Connecticut because Defendants' principal place of business are located in Waterbury, Connecticut and Hartford, Connecticut.

12.     A significant part of the events giving rise to the causes of action alleged herein arose and accrued in Waterbury, Connecticut and Hartford, Connecticut, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Waterbury, Connecticut and Hartford, Connecticut.

## **PARTIES**

*Plaintiffs*

13.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

14.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

15.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

18.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

19.     Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

21.     Plaintiff Lauren Wood ("Wood") is a well-known professional model, and a resident of Maricopa County, Arizona.

***Defendants***

22.     Defendant, Tropix Ultra Lounge, LLC, is a limited liability company formed under the laws of the state of Connecticut and registered to conduct business in Connecticut. During times relevant to this action, Tropix Ultra Lounge, LLC operated Tropix Ultra Lounge in Waterbury, Connecticut

23.     Defendant, Tropix Caribbean Grille, LLC, is a limited liability company formed under the laws of the state of Connecticut and registered to conduct business in Connecticut. During times relevant to this action, Tropix Caribbean Grille, LLC operated Tropix Caribbean Grille in Hartford, Connecticut.

24.     According to publicly available records, Gairy Blake, in his capacity as principal, owner and/or CEO of Tropix Ultra Lounge, LLC and Tropix Caribbean Grille, LLC, maintained operational control over Tropix Ultra Lounge, LLC and Tropix Caribbean Grille, LLC, including all advertising relating thereto.

25.     Service of process may be perfected upon Defendant Tropix Ultra Lounge, LLC by serving the registered agent for service of process, Gairy Blake, who can be located at 384 Stillson Rd, Waterbury, CT 06704.

26.     Service of process may be perfected upon Defendant Tropix Caribbean Grille, LLC by serving the registered agent for service of process, Gairy Blake, who can be located 3229 Main St, Hartford, CT 06120.

<u>**FACTUAL ALLEGATIONS**</u>

27.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

28.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

29.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

30.     In the case of each Plaintiff, this apparent claim was false.

31.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

32.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

33.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which

each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

34.    Burciaga is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to Stuff Magazine. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won Stuff Magazine's, "Neighborhood Knockout," contest.   The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game. Burciaga's popularity rose quickly, and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine, and many others. Burciaga was the Playboy Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series The Girls Next Door. She has various business ventures, including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.4 million followers on Instagram, over 3.2 million Facebook followers, and over 165,500 followers on X (formerly known as Twitter).[1]

35.    That we know of, Burciaga is depicted in the photo in Exhibit "A" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

36.    Burciaga has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

37.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

38.     That we know of, Sampedro is depicted in the photo in Exhibit "B" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either an employee working Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

39.     Sampedro has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_ TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel\/lifestyle\/fashion vlog on YouTube.

41.     That we know of, Guzman is depicted in the photo in Exhibit "C" to promote Tropix on its Facebook and Instagram page. This Image was intentionally altered to make it appear that

Guzman was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

42.    Guzman has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.    Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,600 Twitter followers.

44.    That we know of, Acosta is depicted in the photo in Exhibit "D" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

45.    Acosta has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer damages as a result of same.

46.    Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

47.    That we know of, Geiger is depicted in the photo in Exhibit "E" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Geiger was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

48.    Geiger has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.    Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

50.    That we know of, Crespo is depicted in the photo in Exhibit "F" to promote Tropix on its Instagram and Facebook page. This Image was intentionally altered to make it appear that Crespo was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

51.    Crespo has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer damages as a result of same.

52.     Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

53.     That we know of, Nabila is depicted in the photo in Exhibit "G" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

54.     Nabila has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55.     Rao, who is originally from Miami, FL currently resides in Los Angeles and is an influencer\/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

56.     That we know of, Rao is depicted in the photo in Exhibit "H" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

57.     Rao has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has

received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58.    Wood, after 8 years of serving in the Air Force, took her flight to a new career in Hollywood, winning hearts with her television debut on MTV's Wild N' Out where she starred on 5 seasons and quickly gained recognition as the fan's favorite. This led to many opportunities on various TV shows, movies, and a long run in the modeling industry, booking countless fashion campaigns and billboards. Her down-to-earth authenticity, quick wit, and great sense of humor positioned her to join Rob Dyrdek and Steelo Brim on MTV's Ridiculousness. A young mom, often sharing parenting and healthy lifestyle tips with her online community of over 2 million people (IG (1.7M)  tik ok (125k), YouTube (4k) and X aka Twitter (38k), Wood dreams of restoring the sisterhood of women worldwide, reinstating the beautiful tradition of solidarity, support, and resilience.

59.    That we know of, Wood is depicted in the photo in Exhibit "I" to promote Tropix on its Facebook page. This Image was intentionally altered to make it appear that Wood was either an employee working at Tropix, that she endorsed Tropix, or that she was otherwise associated or affiliated with Tropix.

60.    Wood has never been employed at Defendants' establishments, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

61.    Defendants operate (or operated, during the relevant time period,) Night clubs, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

62.    Defendants own, operate, and control Tropix's social media accounts, including its Facebook, Twitter, and Instagram accounts.

63.     Defendants used Tropix's Facebook, Twitter, and Instagram accounts to promote Tropix, and to attract patrons.

64.     Defendants did this for their own commercial and financial benefit.

65.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Tropix, endorsed Tropix, or was otherwise associated or affiliated with Tropix.

66.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Tropix to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

67.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Tropix, and at no point have any of the Plaintiffs ever endorsed Tropix or otherwise been affiliated or associated with Tropix.

68.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

69.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

70.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

71.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

72.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and

how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

73.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

74.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Tropix.

75.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

76.    In addition, Plaintiffs allege that any improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Tropix.

77.    At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

78.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

79.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Tropix website, Twitter, Facebook, or Instagram accounts.

80.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

81.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

82.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein.

83.    Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishments, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishments, and thereby generate revenue for Defendants.

84.    Thus, this was done in furtherance of Defendants' commercial benefit.

85.    Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, *i.e.,* their persona.

86.    Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

87.    As such, an unauthorized use of Plaintiffs' image to promote an establishments created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and

unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

88.    Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishments advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

89.    Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishments, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishments.

90.    Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishments.

91.    Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

92.    As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

93.    Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

94.    Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

95.     Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Right of Privacy: Appropriation of Likeness)

96.     Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80, and incorporate the same by reference as though fully set forth herein.

97.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Connecticut law.

98.     Defendants have done so by appropriating each Plaintiffs' likeness for commercial purposes without authority or consent.

99.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

100.     At all relevant times, the Defendants' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

101.     Defendants' website and social media accounts were designed to attract business to Defendants' business and generate revenue for Defendants.

102.     Upon information and belief, Defendants posted and publicized each Plaintiff's image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

103.     Upon information and belief, Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

104.    Upon information and belief, Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

105.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Defendants' establishments.

106.    At no point did any Defendants ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

107.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendants' business.

108.    At no point did Defendants ever compensate Plaintiffs for their use of their Images.

109.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

110.    As a result of Defendants' wrongful conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Right of Privacy: False Light)

111.    Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80 above, and incorporate the same by reference as though fully set forth herein.

112.    As set forth hereon, Defendants have violated each Plaintiffs' common law right to privacy under Connecticut law.

113.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent and then portraying each Plaintiff in a false light in Defendants' advertisements.

114.    Upon information and belief, Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that

Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

115. Upon information and belief, Defendants republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

116. Upon information and belief, Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

117. Specifically, Defendants invaded and violated Plaintiffs' privacy and portrayed them in a false light by creating the false impression with the consumers that Plaintiffs were either working at Defendants' establishments, endorsed same, were affiliated, associated, or otherwise connected with same, or had agreed to promote same.

118. Affiliation with Defendants' establishments could lead to significant potential career and personal damage to a professional model because it could lead other clients to refuse to work with them or drop them as a model.

119. At all relevant times, the Defendants' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

120. Defendants' website and social media accounts were designed to attract business to Defendants' business and generate revenue for Defendants.

121. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Defendants' establishments.

122. At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

123. Defendants were at all relevant times aware that they never received any Plaintiff's permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendants' business.

124. At no point did Defendants ever compensate Plaintiffs for their use of their Images.

125.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

126.   As a result of Defendants' wrongful conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Connecticut Unfair Trade Practices Act, Conn. Gen. Stat.§ 42-110b)

127.   Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80 above, and incorporate the same by reference as though fully set forth herein.

128.   Defendants operated Defendants' website and social media accounts in order to promote Defendants' establishments, to attract clientele thereto, and to thereby generate revenue for Defendants.

129.   As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Connecticut.

130.   Defendants published Plaintiffs' Images on Defendants' website and social media accounts in order to create the false impression that Plaintiffs were either working at Defendants' business, endorsed Defendants' business, or were otherwise affiliated, associated, or connected with Defendants' business.

131.   As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendants' business.

132.   Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Connecticut law.

133.   Defendants' advertising practices offend the public policy of Connecticut insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

134.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are working at Defendants' establishments.

135.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are working at, endorse, or are otherwise affiliated with, Defendants' establishments.

136.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

137.    As a result of Defendants'' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiff s' reputations were injured, and each of the Plaintiff s' ability to market herself as a model was injured.

138.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

139.    As required by Conn. Gen. Stat. 42-110g(c), Plaintiffs have transmitted a copy of this Complaint to the Office of the Attorney General of the State of Connecticut.

## FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

140.    Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80 above, and incorporate the same by reference as though fully set forth herein.

141.    Upon information and belief, Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

142.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

143.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

144.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

145.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

146.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and Connecticut law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

147.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

148.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Conversion)

149.    Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80 above, and incorporate the same by reference as though fully set forth herein.

150.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

151.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for their own use and financial gain.

152.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(<u>Unjust Enrichment</u>)**

153.    Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80 above, and incorporate the same by reference as though fully set forth herein.

154.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Defendants' business to the general public and potential clientele.

155.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either working at Defendants' business, or endorsed Defendants' business.

156.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

157.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

158.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishments.

159.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

160.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

161.    Plaintiffs re-allege each and every allegation set forth in the paragraphs 1-80 above, and incorporate the same by reference as though fully set forth herein.

162.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

163.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

164.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work, endorse, or are otherwise affiliated with their business, Defendants have not compensated Plaintiff.

165.    Plaintiffs are therefore entitled to reasonable compensation for Defendants' business unauthorized use of their Images.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' First through Eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Tropix;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.; and

(e) For such other and further relief as the Court may deem just and proper.


Respectfully submitted this December 17, 2024.


THE PLAINTIFFS


By: */s/ Matthew C. Mason*
Matthew C. Mason (ct 15291)
GREGORY AND ADAMS, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000
mmason@gregoryandadams.com

By: */s/ John V. Golaszewski*
John V. Golaszewski*
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Fl.
New York, New York 10019
T: 855.267.4457
F: 855.220.9626
Attorneys for Plaintiffs

**Pro Hac Vice Application*
*Forthcoming*